PAMELA P. BUTLER, Appellant-Respondent, v DAVID A. BUTLER, Respondent-Appellant.

Second Department, September 23, 1991

APPEARANCES OF COUNSEL

*Cheri K. Targoff* for appellant-respondent.

*Valletta & Dorf (Kathleen M. Valletta* on the brief), for respondent-appellant.

### OPINION OF THE COURT

BRACKEN, J.

■ The principal question presented on this appeal is: How should a court distribute an asset which was acquired, and which has significantly increased in value during a marriage, where the asset in question was originally acquired in exchange for unequal amounts of each spouse's separate property? In light of the malleability of the Equitable Distribution Law (Domestic Relations Law § 236 [B]), we conclude that the answer to this question cannot be reduced to any strict mathematical formula, but generally rests in the discretion of the trial court and will depend on the circumstances of each particular case.

The parties' primary financial asset consists of the marital home. The trial court found that this asset was originally purchased with a down payment of $105,000 (the remainder of the $155,000 purchase price having been financed). The trial court also found that each party contributed separate property to this $105,000 purchase price, but in different amounts: the

plaintiff wife contributed $86,442.32 of her separate property and the defendant husband contributed $10,378. The court fixed the current value of the marital residence at $285,000. These findings are supported by the weight of the evidence. The house was purchased in 1982, and the parties separated in 1984.

These facts set the stage for examination of the primary question brought up for review on appeal, that is, how should the proceeds of the sale of the marital residence be distributed? The plaintiff wife argues that pursuant to the terms of Domestic Relations Law § 236 (B) (1) (d) (3), because her separate property (and one half of $8,179.88 in marital property) provided 86.2% of the down payment she should receive 86.2% of the proceeds of the sale. The defendant husband contends instead that upon the sale of the marital residence, each party should, after having received a dollar-for-dollar "credit" in the amount of their original contributions of separate property, receive 50% of the proceeds of the sale. Pursuant to this argument, each party would in effect receive 50% of the postacquisition appreciation of this asset.

An example will serve to illustrate how the two different approaches taken by the parties in this case may often lead to markedly different results. Assume that after their marriage the parties had acquired real property (held in joint title) for $100,000. One spouse contributed $10,000 and the other $90,000 to the down payment. Assume further that at the commencement of a matrimonial action this property (originally worth $100,000) had appreciated to the point where it was worth $500,000. Under the plaintiff wife's approach, the distribution of the $500,000 would be made in accordance with the proportion of each party's contribution to the down payment, that is $50,000 (10%) to one spouse and $450,000 (90%) to the other. Under the defendant husband's approach, each party would be credited only with the actual amount of his or her initial contribution ($10,000 and $90,000, respectively) and the remaining $400,000 would be divided equally. Thus, under the husband's approach, the spouse who paid 90% of the original purchase price receives $290,000 and the spouse who paid $10,000 receives $210,000.

One could argue that the husband's position infringes upon the rule that the appreciation in the value of separate property remains separate property unless the appreciation is attributable to the direct or indirect efforts of the other spouse *(see,* Domestic Relations Law § 236 [B] [1] [d] [3]; *Cappiello v*

*Cappiello,* 66 NY2d 107, 109). His position is sustainable only if an asset acquired during a marriage in exchange for the separate property contributed by both parties, and held in joint title, is deemed to be a marital asset. The cases hold that such an asset is marital property, and it is upon these cases that the trial court relied *(see, e.g., Vogel v Vogel,* 156 AD2d 671; *Nalbandian v Nalbandian,* 135 AD2d 621; *Lisetza v Lisetza,* 135 AD2d 20; *Monks v Monks,* 134 AD2d 334; *Coffey v Coffey,* 119 AD2d 620; *see also, Guarnier v Guarnier,* 155 AD2d 744, 745 [holding that "credit" received for contribution of separate property should include interest on original contribution]).

However, if rigorously applied, the husband's approach could lead to unjust results. For example, in a case where one spouse contributes $99,990 toward the acquisition of a $100,000 asset, and the other contributes only $10, and where that asset then doubles in value, the husband's approach would lead to a distribution of this asset ($149,990 to the larger contributor, $50,010 to the smaller contributor) in such a way as to permit one spouse to obtain a spectacular windfall to the detriment of the other. We, therefore, reject the rigorous application of this analysis as being inconsistent with the basic premises of the Equitable Distribution Law.

On the other hand, pursuant to the wife's approach, when both parties to a marriage contribute their separate property towards the acquisition of an asset during the course of a marriage, the asset would be regarded not as marital property, but rather as an amalgam of separate property, with each party's interest therein being proportionate to the amounts of their original contributions *(see generally, Zuch v Zuch,* 117 AD2d 397; *Ackley v Ackley,* 100 AD2d 153; *Alwell v Alwell,* 98 AD2d 549). Under this approach, an asset acquired during the course of a marriage would, in general, be distributed in accordance with the parties' "relative economic contributions" *(Kobylack v Kobylack,* 111 AD2d 221, 222).

Given the flexibility of the Equitable Distribution Law, the characterization of property as separate or marital property is not necessarily determinative. In any case, both parties' approaches are legally flawed.

The husband's approach (divide the proceeds of the sale of the home equally, after having credited each party with the amount of their original contribution) runs contrary to the widely recognized principle that marital property need not

always be distributed equally (see, e.g., Maloney v Maloney, 137 AD2d 666 [35% of value of husband's professional license awarded to wife]; Kawasaki v Kasting, 124 AD2d 1034 [distribution of 65% of marital assets to husband]; Kobylack v Kobylack, supra [distribution of 72% of marital assets to husband]; see also, Moody v Moody, 172 AD2d 730). In other words, that the marital residence is marital property does not mandate that 50% of the appreciation in the value of that asset must be awarded to each spouse.

The wife's approach (divide the marital home in accordance with the parties' original contributions to the down payment, that is, 86.2% versus 13.8%) is equally flawed, because it runs contrary to the rule that the appreciation in separate property during the course of a marriage can itself be considered marital property to the extent that it is attributable to the efforts of the other spouse (Price v Price, 69 NY2d 8; Fish v Fish, 161 AD2d 979, 980; Smith v Smith, 154 AD2d 365). Thus, even if the valuation of the marital residence consisted of two separate components, the larger one belonging to the wife, we would not be required to conclude that the wife would be entitled to a distribution of the appreciation pro rata to her contribution of separate property. It would not necessarily follow that 86.2% of the appreciation in value of this asset must be awarded to her.

We do not believe that either approach must be taken here. Rather, the ultimate result must be viewed as equitable in light of all of the factors which the Legislature has defined as material (see, Domestic Relations Law § 236 [B] [5] [d]) including "any * * * factor which the court shall expressly find to be just and proper" (Domestic Relations Law § 236 [B] [5] [d] [13]).

In the present case, we expressly find that it would be "just and proper" to award the larger portion of the marital residence to the plaintiff wife, since, as noted above, she contributed 86.2% of the down payment which was essential for that asset's acquisition only two years before the parties separated (see, e.g., Gilkes v Gilkes, 150 AD2d 200, 201 [party's "substantial financial contribution" toward acquisition of asset is a relevant factor]). However, for the reasons outlined above, we do not conclude that the law requires that the distribution of the proceeds of the sale of the house must be strictly proportionate to the amount of her contribution. Instead, we believe that the husband's contributions toward the improvement of

the home, including the improvements which he testified that he made, warrant recognition. Considering this and all of the other relevant factors, including the wife's other financial contributions to the marriage and her contributions as a homemaker, and caregiver of the parties' child, we conclude, as a matter of discretion, that, upon the sale of the marital residence, each party should receive a dollar-for-dollar credit equivalent to the amount of their original contribution of separate property, and that the remainder of the proceeds should be divided, after satisfaction of the mortgage, 75% to the wife and 25% to the husband.

■ We also are of the opinion that the judgment under review should be modified so as to provide for the sale of the marital residence only upon the emancipation of the parties' child, who was born in 1978. The trial court itself recognized that it was in the best interest of the parties' child to continue to reside in the marital premises together with his mother, the plaintiff wife. We agree *(see, e.g., Cusimano v Cusimano,* 149 AD2d 397; *Behrens v Behrens,* 143 AD2d 617). In the absence of any proof sufficient to support the conclusion that the defendant husband is in immediate need of his equitable share of the marital home, we believe that the parties' child should be given the opportunity to reside with his mother, the custodial parent, until the age of 18 years *(see, Cusimano v Cusimano, supra; Behrens v Behrens, supra; cf., Parris v Parris,* 136 AD2d 685).

Because the sale of the marital residence will be postponed for several years, we also believe that it would be appropriate, under the circumstances of this case, to grant the wife leave to apply to the Supreme Court at any time prior to the sale for an additional credit reflecting any costs which she may have incurred in making capital improvements to the house *(cf., Miller v Miller,* 128 AD2d 844). Also, leave should be granted to either party to apply to the court for the appointment of an appraiser or broker of the home if, at the time of the sale, the parties are unable to agree as to an appraiser or broker *(cf., O'Sullivan v O'Sullivan,* 154 AD2d 850; *Dobransky v Dobransky,* 89 AD2d 614).

Accordingly, the judgment under review is modified so as to provide for the sale of the marital premises only· after the eighteenth birthday of the parties' child, and so as to provide for the distribution of 75% of the proceeds of this sale to the plaintiff wife and 25% to the defendant husband, after each party has been reimbursed for the amount of their original

investment. As so modified, the judgment is affirmed insofar as appealed and cross-appealed from.

MANGANO, P. J., THOMPSON and SULLIVAN, JJ., concur.

Ordered that the judgment is modified, on the facts and as a matter of discretion, (1) by deleting so much of the third and fourth decretal paragraphs thereof as (a) requires the plaintiff wife to pay the sum of $70,590 on or before July 1, 1989, in order to continue her exclusive use and occupancy of the marital premises, (b) directs that, unless the plaintiff wife pays $70,590 on or before July 1, 1989, the marital premises is to be placed on the market for sale on or before that date, and (c) fixes the manner in which the proceeds of the sale of the marital residence are to be distributed, and (2) by substituting therefor (a) a provision directing that the plaintiff wife is entitled to the exclusive use and occupancy of the marital residence until such time as the parties' child reaches the age of 18 years, unless sooner emancipated, (b) a provision directing that it is not until such time that the marital premises is to be placed on the market for sale, (c) a provision directing that upon the sale of the marital premises, and after crediting the wife with $86,442.32 and the credits provided for in the second decretal paragraph, and the husband with $10,378, 75% of the proceeds is to be distributed to the plaintiff wife and 25% to the defendant husband, (d) a provision granting leave to the wife to make application to the court for a further credit reflecting the costs of whatever capital improvements she may have made to the house prior to the date of sale, and (e) a provision granting leave to either party to apply to the court for the appointment of an appraiser or broker to conduct the sale if the parties are unable to agree as to the identity of an appraiser or broker; as modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Westchester County, for the entry of an appropriate amended judgment in accordance herewith.